FILED
CLERK

2/8/2016

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
GREER LORRAINE DENNIS           . Civil No. 15-CV-05966-LDH-GRB
and SCOTT FEIGELES,             .
                                .
           Vs.                  .
                                . 100 Federal Plaza
                                . Central Islip, NY
PHARMERICA CORPORATION, et als. .
                                . January 19, 2016
. . . . . . . . . . . . . . . .
```

TRANSCRIPT OF CONFERENCE
BEFORE HONORABLE GARY R. BROWN
UNITED STATES DISTRICT MAGISTRATE


APPEARANCES:


For The Plaintiffs:          HELEN F. DALTON & ASSOCIATES PC
                             By:  PUJA SHARMA, ESQ.
                             69-12 Austin Street
                             Forest Hills, NY  11375



For The Defendants:          WINSTON & STRAWN
                             By:  SHANE BLACKSTONE, ESQ.
                                  B. AUBREY SMITH, ESQ.
                             200 Park Avenue
                             New York, NY  10166




Proceedings recorded by electronic sound recording, transcript
                produced by transcription service.

---

**TRACY GRIBBEN TRANSCRIPTION, LLC**
**859 Nutswamp Road**
**Red Bank, NJ 07701**
**(800) 603-6212**
**(732) 263-0044     Fax No. (732) 865-7179**
www.tgribbentranscription.com

2

```
 1                          I N D E X

 2   ORAL ARGUMENT                          PAGE

 3      BY MS. SHARMA                          4

 4      BY MR. BLACKSTONE                      5

 5   DECISION                                 16

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
                              Colloquy                        3
1            THE CLERK:  Calling case civil 2015-5966, Dennis
2    versus Pharmerica Corporation.  Counsel, please state your
3    appearance for the record.
4            MS. SHARMA:  Puja Sharma from Helen Dalton &
5    Associates for the plaintiffs.
6            THE COURT:  Keep your voice louder, make sure mic is
7    on and I need you to say your name again.
8            MS. SHARMA:   Puja Sharma from Helen Dalton &
9    Associates for the plaintiffs, Your Honor.  Good morning.
10           THE COURT:  Good morning.  It's Ms. Sharma, yes?
11           MS. SHARMA:  Yeah.
12           THE COURT:  Okay.  Counsel?
13           MR. BLACKSTONE:  Good morning, Your Honor, Shane
14   Blackstone from Winston & Strawn for the defendants.
15           MR. SMITH:  Aubrey Smith from Winston & Strawn for
16   the defendants as well.
17           THE COURT:  All right.  Welcome, everyone.  Ms.
18   Sharma, why don't you tell me about the case?
19           MS. SHARMA:  This is an age discrimination case under
20   the ADA and the New York State Human Rights law.  Both
21   plaintiffs were alleging that they were fired due to their age
22   once new management took over at Oncomed in about --
23           THE COURT:  I'm sorry, Ms. Sharma, I'm really
24   struggling to hear you.  Is the green light on, on the mic?
25           MS. SHARMA:  Yes.
```

1          THE COURT:  Then you need to pull it much closer.

2          MS. SHARMA:  Okay.

3          THE COURT:  And remember that I don't want to miss a

4    single syllable of what you have to say so let me have it.  Go

5    ahead.

6          MS. SHARMA:  Is this better?

7          THE COURT:  Yes, it's better, go ahead.

8          MS. SHARMA:  Okay.  Both plaintiffs were working at

9    Oncomed Pharmacy.  One started in 2005, the other in 2009.

10   They both allege that they were fired due to their age after

11   new management took over.  They had never been written up or

12   disciplined prior to that.  So they were terminated for,

13   basically due to their age.  The policy in the company once new

14   management took over was to let go of older employees and hire

15   new or younger employees.

16         THE COURT:  Okay.  And how much money is at issue

17   here?

18         MS. SHARMA:  Presently, we are claiming one million

19   for each plaintiff.

20         THE COURT:  Okay, based on what?

21         MS. SHARMA:  Loss of income, loss of future earnings

22   and I think that's it, Your Honor.

23         THE COURT:  Okay.  What were they doing for the

24   company?  You may have said that but I may have missed it.  I'm

25   sorry.

1            MS. SHARMA:  Ms. Dennis was an intake coordinator and

2    also did insurance investigation work in addition to other

3    miscellaneous tasks and Scott was a pharmacist.

4            THE COURT:  Okay.  And what did they earn in those

5    roles?

6            MS. SHARMA:  Off the top of my head, I don't know.

7            THE COURT:  Okay.  Have they found work since?

8            MS. SHARMA:  I believe so, but I'm not sure.

9            THE COURT:  Okay.  Important facts because we have to

10   know what the differential is, right, to know if we're going to

11   get somewhere, yes?

12           MS. SHARMA:  Yes, Your Honor.

13           THE COURT:  So without that information, it's hard

14   for me to sort of figure out a good path but we'll do what we

15   can.  All right, let me hear from counsel.

16           MR. BLACKSTONE:  Good morning, Your Honor.  Your

17   Honor, the defendant's position is first their employer is one

18   of the defendants, Sina Drug, also known as Oncomed.  Both

19   plaintiffs were terminated for reasons that had nothing to do

20   with their age.

21           THE COURT:  Wait, let me slow you down a bit.  When

22   you say one of the defendants was their employer?

23           MR. BLACKSTONE:  Yes, Your Honor.  They have named a

24   minority owner of the employer defendant as a defendant as

25   well.

1            THE COURT:  Okay.

2            MR. BLACKSTONE:  And that company is called

3 Pharmerica Corporation but the plaintiffs were never employed

4 by that entity and the complaint does not allege that they were

5 employed by the entity.

6            THE COURT:  So is it your suggestion that Pharmerica

7 is not a proper defendant?

8            MR. BLACKSTONE:  Yes, Your Honor.

9            THE COURT:  And is the proper defendant named?

10            MR. BLACKSTONE:  Yes, Your Honor.

11            THE COURT:  Okay.  What are we doing about those

12 other, about the other allegedly improper defendant?

13            MR. BLACKSTONE:  Your Honor, I've raised the issue

14 with plaintiff's counsel and they believe that given the

15 status, they understand that Pharmerica Corporation is the

16 parent company of the employer of the plaintiffs and believe

17 that as a result they're a proper defendant so our view would

18 be that we would be looking for an early dispositive motion to

19 remove Pharmerica Corporation from the case as it resolve.

20            THE COURT:  Ms. Sharma, do you have reason, I mean do

21 you have case law that supports the notion that a parent

22 corporation should be sued in this circumstance?

23            MS. SHARMA:  Our clients told us that they were in

24 charge of putting in new management so to speak, the parent

25 company.  So the way it was explained to me was that they also

1  had a role in hiring new management to take over and input some

2  of these policies.  That is why we wanted some more discovery

3  to figure out if they actually were, if they actually had any

4  role in the discrimination or not.

5         THE COURT:  Let me ask you a question.  The company

6  they actually work for is what?

7         MS. SHARMA:  It was called Oncomed.

8         THE COURT:  Okay, is that a company that's sort of

9  financially marginal or is it a substantial entity?

10        MS. SHARMA:  I don't know that, Your Honor.

11        THE COURT:  Okay.  Can you answer that question, Mr.

12  Blackstone?

13        MR. BLACKSTONE:  I don't have the details concerning

14  the defendant's financial situation.

15        THE COURT:  Okay.  Because I'm assuming it's a

16  solvent --

17        MR. BLACKSTONE:  It is a solvent entity.

18        THE COURT:  Right.  I mean if they're not judgment

19  proof, I'm not sure that we need to spend a lot of time arguing

20  about Pharmerica's role, right?  I mean, in other words, it's

21  going to delay your case while that gets resolved, although

22  Judge Wexler keeps things moving on both tracks, if it's a

23  pointless exercise, you should think about that and maybe come

24  to some agreement with counsel on that point or not.  It's up

25  to you, right?  Do you believe counsel that the appropriate

1  defendant would agree that plaintiffs would not be prejudiced

2  by dismissing against Pharmerica?

3          MR. BLACKSTONE:  I agree that they would not be

4  prejudiced by dismissing Pharmerica Corporation.

5          THE COURT:  Right.  So in other words, you're not

6  going to come to me two months from now and said, oh well, now

7  we can't do discovery on this issue because now that Pharmerica

8  is out of the case, we're not going to let them have these

9  files.

10          MR. BLACKSTONE:  That's correct, Your Honor.

11          THE COURT:  Okay.  So I don't know that there would

12  be a practical problem.  I know there won't be a discovery

13  problem.  So talk to whoever you have to talk to and think

14  about that.  If we can move the case a little bit faster, it

15  would be good for everybody.

16          MS. SHARMA:  Thanks, Your Honor.

17          THE COURT:  After all, the Chief Justice of the

18  United States Supreme Court has urged us to make litigation

19  faster and more cost efficient so we're all trying.  It's up to

20  you guys, too.  So try to work that out.  What else?

21          MR. BLACKSTONE:  Your Honor, just on the merits of

22  the claim, Your Honor, defendant Onco's position is that

23  defendant Dennis, or I'm sorry, plaintiff Dennis who is in the

24  customer service role was terminated because the decision was

25  made to replace persons in a customer service role with

1  certified technicians who had degrees, medical related degrees

2  and plaintiff, Dennis did not, the reason being that it would

3  provide greater customer service to people calling in.  This is

4  sort of a specialty pharmacy operation and it would improve

5  their business and customer relations to have certified

6  individuals in that role.

7           And plaintiff, Feigeles was terminated for

8  misconduct.

9           THE COURT:  Okay, tell me about that.

10          MR. BLACKSTONE:  Your Honor, it was discovered that

11 he had engaged in improper billing practices.  He was

12 responsible for billing for pharmaceutical drugs that he was

13 filling and he was engaged in misconduct in terms of how he was

14 billing them.  He was not billing them accurately and he was

15 doing so, he was intentionally not billing accurately.

16          THE COURT:  Why?  Was he profiting from that?

17          MR. BLACKSTONE:  My understanding he wasn't

18 personally profiting from it but it made his job easier because

19 if he billed it in an appropriate way, and the billing was

20 rejected, it would sometimes be more difficult or require more

21 paperwork to have it billed, have that billing anomaly

22 corrected as opposed to if he just changed how he was billing

23 it, inserted different codes for example so that he could then

24 get the charge through.

25          THE COURT:  Is there a good HR record in terms of

1  progressive discipline or anything like that?

2          MR. BLACKSTONE:  My understanding, Your Honor, is

3  that the severity of this incident was discovered and he was

4  terminated as a result of what was discovered to be a pattern

5  of improper billing.

6          THE COURT:  How long had these employees been with

7  this company, do you know?

8          MR. BLACKSTONE:  I believe that one of the plaintiffs

9  had been there for about nine years and the other about seven

10  years.

11          THE COURT:  Okay.  Now, you said Dennis was replaced

12  with someone more qualified, is that essentially the argument?

13          MR. BLACKSTONE:  Someone who had like a certified

14  medical degree.

15          THE COURT:  So was he terminated, was it for cause

16  termination?

17          MR. BLACKSTONE:  The customer service role was not a

18  for cause termination.  No, Your Honor, it was sort of more of

19  a layoff reorganization's type of lay off and I believe, you

20  know that she was offered, you know, some severance as a result

21  of that but she did not avail herself to that.

22          THE COURT:  That was my next question.  Was there a

23  release, right?  You should have had a severance package.  All

24  right.  Fine.  We have a discovery plan worksheet.  These are

25  adjoined dates, counsel?

1             MR. BLACKSTONE:  Yes, Your Honor.

2             MS. SHARMA:  Yes, Your Honor.

3             THE COURT:  Okay, good.  Mr. Blackstone, you have not

4  been here before, is that correct?

5             MR. BLACKSTONE:  That's correct.

6             THE COURT:  In my court, yes?

7             MR. BLACKSTONE:  That's correct.

8             THE COURT:  Welcome and besides that, Ms. Sharma may

9  have heard me give this speech in the past because you have

10 been here before if I remember.  This case is assigned to Judge

11 Wexler.  What that means is this last date on the sheet, right,

12 the October 19th date, is written in blood, carved in stone.

13 Whatever analogy you want to use for a sense of finality, use

14 that in your mind.  Because you can come to me in September say

15 of this year with the greatest excuse ever articulated in a

16 federal courtroom and I will listen.  I will be sympathetic.

17 No, I will be empathetic.  I will feel your pain but please

18 remember, there's nothing I can do to help you because Judge

19 Wexler doesn't authorize me to change that last date.

20             The internal dates I'm happy to have you manage

21 yourselves, meaning you want to change one of these dates if

22 you agree, we actually agree, make 5/19 6/19 whatever it is,

23 I'm basically going to sign off on it unless I have an issue,

24 if you don't.  But if you want to change his last date, not

25 only can't I help you, don't even bother talking about it.  Go

1  to him and good luck with that.  But most likely you'll be

2  trying this case in November.  So get ready for trial.  You

3  have a very short window to get ready for trial.  I know you

4  have a partially dispositive motion.  He's going to keep

5  everything running, meaning we're going to do discovery at the

6  same time.  It's not going to stop anything.

7        You may be thinking to yourself well, I'll simply

8  make a really fine, powerful, weighty summary judgment motion

9  and knock this thing off.  It's not going to happen.  He might

10  just say oh, we'll do that after the trial or, you know

11  something like that.  Get ready to try the case at the end of

12  this year because that's almost certainly what's going to

13  happen, all right?

14        But let's talk about an alternate path because I'm

15  given these cases for two reasons, one is to manage discovery,

16  the second is to try to figure out if there is some other

17  resolution.  And that's where my Phase 1 discovery comes in.

18  The date that you've given me, 3/18 date to that category, what

19  I ask you to do between now and 3/18 is to exchange that which

20  you really need to have an intelligent discussion about

21  settlement.  No one can be forced to settle but it's often a

22  good opportunity and I try to do it early before we sustain a

23  lot of litigation costs and angst and people get hardened in

24  their positions and it gets nasty.

25        All right, so before all that, we'll come in here and

1   we'll have a settlement conference.  Now, please check my

2   rules.  I have very particular rules about a settlement

3   conference.  You have to have clients here.  Now, Ms. Sharma,

4   that's easy.  We know who your clients are.  They need to be

5   here.  Mr. Blackstone, we know who your clients are in part,

6   corporations so we'll need humans here.

7           And they must be humans with real settlement

8   authority, okay, meaning that sometimes things change during

9   the conference and we have to, they have to react to facts and

10  they have to have the ability to change their position.  No,

11  no, I got $10 in the bag and that's it.  It has got to really

12  be, you figure out who that person is, make sure it's the right

13  person, okay?

14          You can also provide ex parte submissions to me prior

15  to the settlement conference.  You don't serve them.  You don't

16  file them.  It's a short up to say two or three pages.  Letter

17  to me, telling me your plan for settling the case.  The more

18  specific you are, the better our results usually are.  And I

19  assure you that I will not share that with the other side until

20  and unless you authorize me to share it.  It could also contain

21  significant facts.  Judge, you should know this.  You should

22  know this about billing practice.  You should know this about

23  his history that, whatever it is.  You can let me know, okay?

24          All right.  So we will enter this discovery plan

25  worksheet as the discovery order in the case that's right, you

1   just magically was converted to an order while you were sitting

2   here.  That's how the law happens.  What else do we need to do

3   today, counsel?

4           MR. BLACKSTONE:  Your Honor, the parties have

5   discussed this sort of initial round of discovery.  I'm not

6   sure if Your Honor wants us to discuss that now or --

7           THE COURT:  It's a good idea.  So what are you going

8   to exchange?

9           MR. BLACKSTONE:  We have a list of documents that

10  we've agreed upon for both sides, a list of categories of

11  documents and there's a disagreement on one category of

12  document that the plaintiff has requested.  So I would defer to

13  plaintiff's counsel to introduce that.

14          MS. SHARMA:  We have requested, --

15          THE COURT:  Ms. Sharma, what do you want?

16          MS. SHARMA:  -- a list of personnel terminated over

17  the age of 40 from the company within the last three years.  We

18  believe it would be helpful to establish that this was a

19  willful and widespread policy going on at the time.  I think it

20  would be helpful to both sides because if they release this

21  list and it shows that there weren't significant terminations

22  over 40 then it would be helpful to them and for settlement

23  talks as well.

24          THE COURT:  What's your objection?

25          MR. BLACKSTONE:  Your Honor, on a number of grounds.

1  First, I think it's unduly burdensome for purposes of the

2  limited purpose of getting ready for a settlement conference.

3  It doesn't have anything to do with the reasons that the two

4  plaintiffs were terminated.  It's not limited, you know we have

5  significant concerns that it would, you know perhaps never be

6  discoverable, but in the event it ultimately is discoverable,

7  we think it would only be appropriate in a more limited

8  timeframe.  They've only alleged that older people were

9  terminated starting in December 2013, not for a three year

10 period.

11         They haven't limited the request to similarly

12 situated individuals at the company.  And I guess more

13 importantly in terms of overall relevance, it's not obvious to

14 me how a list of people who are terminated over the age of 40

15 or a list of all people who are terminated for that matter

16 really tells you anything about the reasons those people were

17 terminated, from what population they were terminated and all

18 those things which leaves us to a much greater discovery issue.

19         THE COURT:  Right.  So let me ask you a question

20 though, counsel.  You did mention one of the individuals was

21 terminated as part of a reduction force in part.

22         MR. BLACKSTONE:  Part of a reorganization of our

23 group, yeah.

24         THE COURT:  I mean so if you had the list of people

25 who left during reorganization and they were all 57, that would

1 be an interesting fact potentially.

2          MR. BLACKSTONE:  Potentially.

3          THE COURT:  Potentially.  But of course it is 2016

4 and the rules have changed, right?  It used to be as I said

5 relevance, forget it but now the rules tell us we have to look

6 at relevance and proportionality.  So let's start with

7 proportionality.  How big a company is this?  How many

8 employees are we talking about?

9          MR. BLACKSTONE:  I don't have a specific number, Your

10 Honor.

11          THE COURT:  Give me a ballpark.  Is it 7?  Is it 70?

12 Is it 700?Is it 7,000?

13          MR. BLACKSTONE:  I think it's a couple hundred.

14          THE COURT:  A couple hundred, okay.  So the list of

15 people terminated, I would not give her a three year period but

16 say over a one year period might be what, a two digit number?

17          MR. BLACKSTONE:  I would anticipate it in that range.

18          THE COURT:  Yes, so that doesn't sound like it's

19 overly burdensome from proportionality standpoint, is that

20 fair?

21          MR. BLACKSTONE:  It's fair but I think I have my

22 broader concern is that it doesn't tell us anything useful for

23 purposes of a settlement conference --

24          THE COURT:  I agree that it is not relevant for the

25 purposes of the settlement discussion.  What I'm going to say

Decision                                    17

1   is, if you don't settle the case and we roll into phase rule

2   and we've got very short windows here so I want to make sure

3   we're clear at the beginning.  I will direct you to turn over

4   the list of all employees terminated within a year of the

5   termination of these individuals but that will be after the

6   settlement conference, okay, because they have to follow up on

7   that and there might be depositions, whatever.

8           Because if you have a different proposal in that, in

9   other words you say, okay, but Judge we want to limit that to

10  the pain killer division.  I'm making something up.  I don't

11  know how the, I'll hear you, right?  But I eventually will be

12  directing you if we go forward to give them similarly situated

13  individuals because that strikes me as in the realm of

14  something we're going to have to explore if this thing is going

15  to go to trial, okay?

16          MR. BLACKSTONE:  Understood.

17          THE COURT:  So Ms. Sharma, not in anticipation of the

18  settlement but you'll get that eventually if we're going to

19  fight.  Maybe we're going to fight.  I'm always optimistic.  I

20  hope not.  I hope we can work something out but we'll see.

21  What else?

22          MS. SHARMA:  I think that's it, Your Honor.

23          THE COURT:  Okay.

24          MR. BLACKSTONE:  That's all from us, Your Honor.

25          THE COURT:  All right.  Give me a confidentiality

1  order, there's one attached to my rules that saves some time if

2  you want but you can write your own as well if you want to.  I

3  just if I see mine, I sign it right away because I wrote it.

4  All right.  Very good, nice people all of you.  Nice seeing you

5  again.  Have a good day.

6          MS. SHARMA:  You too, thank you, Your Honor.

7          MR. BLACKSTONE:  Thank you, Your Honor.

8                         * * * * *

9              **C E R T I F I C A T I O N**

10         I, Tracy Gribben, court approved transcriber, certify

11 that the foregoing is a correct transcript from the official

12 digital audio recording of the proceedings in the

13 above-entitled matter.

14

15 /s/ TRACY GRIBBEN

16 TRACY GRIBBEN TRANSCRIPTION, LLC DATE:  February 8, 2016

17

18

19

20

21

22

23

24

25